UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FELIX NKANSAH,

       Plaintiff,

                 **MEMORANDUM & ORDER**

  -against-

                 10 CV 3211

MEDICAL DEPARTMENT of MCC, et al.,

       Defendants.
------------------------------------------------------------X
DEARIE, District Judge.

  Plaintiff, a pro se prisoner, brings this action pursuant to 42 U.S.C. § 1983. He alleges deliberate indifference to his medical needs, in violation of the Eighth and Fourteenth Amendments, during several periods of incarceration in the Metropolitan Detention Center ("MDC") and the Metropolitan Correctional Center ("MCC") between September 9, 2008, and July 16, 2010. Plaintiff asks for declaratory and injunctive relief, $600,000 in compensatory damages and $600,000 in punitive damages.

  Section 1983 suits redress constitutional violations by state, not federal, actors. In light of plaintiff's pro se status, however, the Court interprets his complaint as seeking relief under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). By Order dated August 26, 2010, the individual doctors, nurses and physician's assistants involved in plaintiff's medical care during the relevant periods were added as defendants.

  Defendants move to dismiss plaintiff's claims against MDC and MCC for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and move for summary judgment pursuant to Rule 56(a) on plaintiff's claims against the individual

defendants on the ground that plaintiff failed to exhaust his administrative remedies. For the reasons set forth below, the motions are granted.

## BACKGROUND

Plaintiff was arrested on September 9, 2008, and detained at MDC. On December 24, 2008, he was released on bail. On July 23, 2009, his bail was revoked, and he was remanded to MDC until September 22, 2009, when he was transferred to MCC for his trial. On February 9, 2010, he returned to MDC and remained there until he was transferred to Moshannon Valley Correctional Center ("MVCC"), his designated facility, on July 16, 2010.

### A. Medical Treatment Allegations

Plaintiff alleges in his complaint that he began experiencing upper ear pain in November 2008 and by mid-month noticed a yellowish discharge. He claims that he made repeated requests for sick calls, but was not seen by a doctor until the end of the month. That physician diagnosed plaintiff with an ear infection and prescribed antibiotics which reduced the pain and eliminated the discharge. Plaintiff alleges that his symptoms returned in September 2009, and that he again made repeated requests for sick calls but was only seen in the MDC medical unit for a drug test.

Plaintiff alleges that his pain and discharge became more severe after his transfer later that month to MCC, but he acknowledges that his symptoms responded to treatment with the same antibiotics previously prescribed at MDC. According to his complaint, when his symptoms returned in November, he was prescribed stronger antibiotics that were effective for about two weeks but then the pain and yellow discharge returned. He claims that an MCC doctor told him

2

that surgery was required to correct his condition, but he was transferred back to MDC on February 9, 2010, before the scheduled procedure.

Plaintiff alleges that his ear pain and discharge continued at MDC, and he was again treated with several rounds of antibiotics. He claims that he began experiencing abdominal pain in June 2010 and was prescribed an additional medication to take with the antibiotics. According to his complaint, however, the pain and discharged returned and were uncontrollable. He alleges that he found it difficult to hear and speak and that he could not be around other people because of the odor of the discharge.

## B. Remedy Requests

During the more than thirteen months that he was incarcerated at MDC and MCC, plaintiff filed four informal requests, two in November 2009 and two in June 2010. Copies of the forms are attached to his complaint. Three are captioned "Inmate Request to Staff," and one is captioned "Inmate Request for Informal Resolution." In the first, an Inmate Request to Staff form dated November 5, 2009, plaintiff detailed his complaint of an ear infection and related pain around his face, eyes and head. In the second, an Inmate Request to Staff form filed ten days later on November 15, 2009, he complained again of pain as well as cramping and a rash from the medication. He also claimed that he had been unable to sleep for two months. On the Inmate Request to Staff Form that plaintiff filed on June 16, 2010, he complained that the antibiotics he had been given for the past ten months had not cured his ear infection but had made it worse. On the Inmate Request for Informal Resolution he filed the same day, he wrote that he had been suffering from an ear infection for the past ten months and needed immediate

surgery. Plaintiff complained that different doctors in the medical departments of MCC and MDC had always treated him with antibiotics but that he was told that only surgery could cure his infection. In response to his request, received on June 24, 2010, plaintiff was advised of the following "Action Taken": "you were seen by a clinician on 6/22/10 and were treated and were advised by the clinician to return to the clinic if this is not improved." (Compl. at 9.) Plaintiff never filed any formal administrative complaints. (Colvin Decl. ¶ 12 & Ex. B, SENTRY Record of Administrative Remedy, dated August 10, 2010.)

In opposition to defendants' motion for summary judgment, plaintiff submits an affirmation in which he asserts that his unit manager provided him with the Inmate Request for Informal Resolution Form he filed on June 16, 2010 "which [he] believed [wa]s a BP 9." (Pla. Aff. ¶ 3(vi).)[1] In addition, by letter dated May 30, 2011, he submits additional documentation he contends demonstrates his exhaustion of administrative remedies. The additional documents, however, are formal administrative remedy requests in which plaintiff complains about his medical treatment at his current facility, MVCC, and are not relevant to the claims before this Court.[2]

---

[1] Plaintiff also submits a declaration from a former cellmate at MDC recounting the symptoms plaintiff complained of and experienced, MVCC medical records from July to December 2010, and informal remedy requests regarding his medical treatment at MVCC.

[2] The Court notes that MVCC is a private facility operated by Cornell Companies under a contract with the Bureau of Prisons. Plaintiff's appeals to the BOP Regional Director and BOP Central Office appear to have been rejected on the grounds that his issue is not appealable to the BOP, and he has been advised to appeal through the grievance procedure process at his facility. The Formal Administrative Remedy Form he completed on January 21, 2011, instructed that he could appeal a non-appealable BOP issue via a Cornell Companies Administrative Remedy Appeal Form.

The Court also notes that in response to plaintiff's January 21, 2011 grievance, the

4

# DISCUSSION

## A. Claims against MDC and MCC

Defendants move to dismiss plaintiff's claims against MDC and MCC for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In deciding a Rule 12(b)(1) motion, the Court "must accept as true all material factual allegations in the complaint," Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004)), but the Court does not "draw inferences from the complaint favorable to [the] plaintiff[]." J.S., 386 F.3d at 110. In resolving a jurisdictional issue, the Court may "consider affidavits and other materials beyond the pleadings . . . but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id.

Plaintiff's complaint names the Medical Departments of MDC and MCC as defendants. Both MDC and MCC, however, are part of the Bureau of Prisons ("BOP"), a federal agency, and because there has been no waiver of sovereign immunity for constitutional tort claims against the United States and its agencies, they are immune from suit. See F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994) (refusing to extend Bivens to federal agencies). Moreover, to the extent that plaintiff's claims could be construed as being brought against the individual defendants in their

---

MVCC warden informed him that, based on numerous examinations by the MVCC doctor, his ear gland condition had been determined to be chronic and congenital. His condition was noted as responsive to antibiotics, and he was advised that unless his ear condition significantly changed, he would not receive surgery for correction. Such intervention was classified as elective because it was either not likely to provide substantial long-term gain or was expressly for his convenience. (See Memorandum from Warden Cameron Lindsay, dated January 16, 2011, attached to Pla. May 30, 2011 Letter.)

official capacities, sovereign immunity extends to those defendants, too. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against . . . federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.") Accordingly, plaintiff's claims against MDC, MCC and the individual defendants in their official capacities are dismissed for lack of subject matter jurisdiction.

## B. Claims against the Individual Defendants

Defendants move for summary judgment dismissing plaintiff's claims against the individual defendants on the ground that he failed to exhaust his administrative remedies. Summary judgment "is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 255 (1986)). The party opposing summary judgment must set forth evidence demonstrating a genuine issue for trial, and may not rely only on allegations in its pleadings. Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) ("[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment."). Moreover, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996).

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Thus, federal prisoners bringing Bivens actions "must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." Porter v. Nussle, 534 U.S. 516, 524 (2002). The PLRA's exhaustion requirement applies to claims regarding general circumstances and specific episodes of prison life, id. at 532 (2002), and exhaustion is mandatory even if plaintiff seeks relief the BOP is not authorized to provide, Macias v. Zenk, 495 F.3d 37, 42 (2d Cir. 2007); Booth v. Churner, 532 U.S. 731, 740 (2001). Moreover, regardless of whether a prisoner takes sufficient informal steps to put prison officials on notice or files an administrative tort claim, the PLRA requires "proper exhaustion." Macias, 495 F.3d at 44. As made clear in Woodford v. Ngo, 548 U.S. 81 (2006), "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance" and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." Macias, 495 F.3d at 44 (quoting Woodford, 548 U.S. at 95). Furthermore, exhaustion must occur before an action is filed in federal court. Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed . . . is insufficient."). Failure to exhaust is an affirmative defense, however, and not a jurisdictional requirement. Jones v. Bock, 549 U.S. 199, 216 (2007).

The BOP has established a three-tiered administrative procedure that "allow[s] an inmate to seek formal review of complaints related to any aspect of [his] confinement." 28 C.F.R. § 542.10. Before filing a formal complaint, however, a federal inmate must first seek an informal resolution of his complaint from prison staff. 28 C.F.R. § 542.13(a). If the complaint cannot be

7

resolved informally, an inmate must submit a formal written Administrative Remedy Request BP-9 form to the Warden within twenty calendar days of the occurrence giving rise to the complaint. 28 C.F.R. § 542.14(a). If not satisfied with the result, an inmate may submit an appeal to the Regional Director by filing a BP-10 form within twenty calendar days of the date the Warden signed the response to the BP-9. 28 C.F.R. § 542.15(a). Finally, the inmate may appeal to the BOP's General Counsel by filing a BP-11 form within thirty calendar days of the date of the Regional Director's adverse response to the BP-10. Id.

Construing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, the Court must nevertheless grant defendants' motion because plaintiff failed to exhaust his administrative remedies before initiating this action. He never filed an Administrative Remedy Request with the Warden, nor did he file any forms with the Regional Director or General Counsel, as mandated by the BOP grievance procedures. (Colvin Decl. ¶ 12 & Ex. B, SENTRY Record of Administrative Remedy, dated August 10, 2010.) The attachments to plaintiff's complaint are informal requests that satisfy only the prerequisite to initiating the formal three-step administrative process. Thus, there is no genuine issue of material fact as to plaintiff's failure to exhaust.

Plaintiff argues, however, that he should be excused from the exhaustion requirement on the ground that formal administrative procedures were effectively unavailable to him. He claims that although he was never properly treated for his ear infection, he received repeated "favorable rulings" in response to his informal requests for medical care and that, consequently, no mechanism was in fact available to him to appeal defendants' failure to actually implement those favorable rulings. Under Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), failure to

exhaust may be excused if (1) administrative remedies were not in fact "available"; (2) defendants have forfeited the affirmative defense of non-exhaustion or are estopped from raising it because their own actions inhibited the prisoner's exhaustion; or (3) "'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" Macias, 495 F.3d at 41 (quoting Hemphill, 380 F.3d at 686).

Plaintiff's contention that administrative procedures were effectively unavailable to him as a result of his consistent receipt of "favorable rulings," however, is belied by his own submissions to the Court. The record does not support his assertion that each of his treatment requests was granted, nor does it support that his specific request for surgery was approved or prescribed. Two of the Inmate Request to Staff forms attached to his complaint lack any disposition whatsoever, and, as detailed above, in response to his request for immediate surgery on the June 16, 2010 Inmate Request for Informal Resolution form, he was told that he had already received treatment and could return to the medical unit if his condition did not improve. Furthermore, plaintiff's transfer three weeks after he received a response to his last informal resolution request does not excuse his failure to properly exhaust. See, e.g., Hill v. U.S. Attorney's Office, 2009 WL 2524914, *5 (E.D.N.Y. 2009) (ten days in which to file grievance before transfer constitutes sufficient time); Miller v. Bailey, 2008 WL 1787692, at *6 (E.D.N.Y. 2008) (inmate had sufficient opportunity to file grievance regarding February 24, 2004 incident before transfer in May 2004).

Plaintiff's belief that he completed a BP-9, despite the informal resolution request caption on the form he submitted, also does not excuse him from the exhaustion requirement. Plaintiff does not allege, and there is nothing in the record to suggest, that defendants interfered in any

9

way with his obtaining the appropriate forms. Nor are there any other allegations of special circumstances justifying plaintiff's failure to exhaust the BOP's administrative process.

## CONCLUSION

For the reasons stated above, defendants' motions are granted, and the complaint is dismissed in its entirety. The Clerk of the Court is directed to close this case. In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
　　　　September _9_, 2011

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge